IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| ANTHONY BANDALAN, | ) | CV. NO. 07-00591 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| CASTLE AND COOKE; JOHN DOES 1-10 JANE DOES 1-10; DOE CORPORATIONS; DOE PARTNERSHIPS 1-10; AND DOE GOVERNMENT ENTITIES 1-10, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After reviewing the motion and the supporting memorandum, the Court GRANTS Defendant's Motion.

BACKGROUND

Anthony Bandalan ("Plaintiff") was hired by Defendant Castle & Cooke Resorts ("C&CR") in August 1987 as a truck driver.  Plaintiff was subjected to random drug testing under Department of Transportation ("DOT") regulations and company policy.  The terms and conditions of Plaintiff's employment were governed by a Collective Bargaining Agreement ("CBA") between Defendant

C&CR and ILWU Local 142 (the "Union"), as well as a Union approved drug testing policy.

Plaintiff failed a random drug test conducted on August 27, 2004, because it was positive for marijuana.  Plaintiff was suspended pursuant to DOT requirements and company policy.  On October 5, 2004, Plaintiff indicated a willingness to relinquish his commercial driver's license ("CDL") in order to be able to return to work.  On October 14, 2004, Plaintiff, the Union, and Defendant C&CR negotiated a return to work agreement in which Plaintiff relinquished his CDL and agreed to be subjected to follow up drug testing for a period of twelve months.

On February 7, 2006, Plaintiff submitted to Defendant C&CR's request for a random drug test.  Neither he nor the Union voiced any objections or filed any grievance with regard to the testing.  On or about February 16, 2008, Defendant C&CR was informed by its laboratory that the results of the drug test had come back positive for marijuana, and Defendant C&CR informed Plaintiff of his second positive test for marijuana on February 23, 2006.  According to Daniel Ferguson, Employee Services Manager for Defendant C&CR, Plaintiff informed him on February 23, 2006, that Plaintiff had traveled to another island at Plaintiff's own expense on February 8, 2006, in order to take another drug test, one day after

Defendant C&CR's drug test of February 7th, and that this test had come back negative. (See Ferguson Decl. ¶ 2.)

Defendant C&CR chose not to rely on the test results of February 8 provided by Plaintiff because Defendant C&CR considered these results unreliable. On March 2, 2006, Defendant C&CR terminated Plaintiff's employment effective March 6, 2006, as a result of the positive February 7, 2006 drug test for marijuana.

Also on March 2, 2006, Plaintiff and the Union filed a grievance over his termination. The Union processed the grievance through step two of the CBA grievance process, but did not pursue the grievance through step three.

Plaintiff filed a Complaint against C&CR and doe defendants in state court on September 27, 2007, alleging Breach of Contract (Count 1), Breach of Implied Covenant of Good Faith and Dealing (first Count 2), Breach of Fiduciary Position (second Count 2), and Intentional Infliction of Emotional Distress (Count 3) ("IIED"). C&CR removed the instant case to this Court on December 12, 2007.

On January 29, 2008, counsel for C&CR requested that Plaintiff voluntarily withdraw the Complaint on the grounds that none of the claims could be maintained as a matter of fact and law. According to Nathalie S. Kline, Esq., one of the attorneys representing C&CR, Plaintiff's attorney agreed to amend the Complaint and remove several inadvertently included paragraphs. (See Doc. # 19

Kline Decl. ¶ 2). On March 3, 2008, the Court set a deadline of April 3, 2008, by which Plaintiff was to amend the Complaint to delete paragraphs 18 and 19 that alleged social companionships, a Quitclaim Deed or deed Without Warranty and breach of fiduciary position. Plaintiff did not meet the April 3, 2008 deadline.

On September 24, 2008, C&CR filed the instant Motion for Summary Judgment. (Doc. # 18.) Plaintiff did not file an opposition. C&CR filed a reply on October 30, 2008.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

C&CR argues that all of Plaintiff's claims are preempted by Section 301 ("§ 301") of the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 185.  This Court agrees.

A state law claim is pre-empted under Section 301 if it is "inextricably intertwined" with the terms of the collective bargaining agreement.  Allis-Chalmers

Corp. v. Lueck, 471 U.S. 202, 213 (1985). As framed by the Supreme Court, the test is:

> whether the [state action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If state tort law purports to define the meaning of the contract relationship that law is pre-empted.

Id. When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement between the parties in a labor contract, that claim must be treated as a § 301 claim or be dismissed as preempted by federal labor-contract law. Id. at 220; see Newberry v. Pac. Racing Ass', 854 F.2d 1142, 1146, 1146 (9th Cir. 1988) (application of state law is preempted by § 301 "only if such application requires the interpretation of a collective-bargaining agreement") (quoting Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413 (1988)). "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1982) (internal quotation marks omitted)).

If the state law claim does not turn on any collective-bargaining agreement interpretation, however, the claim is not pre-empted. Lingle, 486 U.S. at 1881. Even if the state law claim requires addressing the same set of facts, as long as the state law claim can be resolved without interpreting the CBA itself, the claim is not pre-empted. Id. at 1883.

Here, Plaintiff was employed by C&CR and was a member of the Union, which had a CBA with C&CR that covered his job position and the terms and conditions of his employment, including the Union-approved drug testing policy. Plaintiff's claim for Breach of Contract (Count 1) alleges his termination based upon drug testing violated C&CR's policies and his employment contract. Certainly, in order to determine this breach of contract claim, this Court would have to interpret the CBA as the claim concerns a job position covered by the CBA and Plaintiff was terminated for violating policies covered by the CBA. See Chmeil v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1286 (9th Cir. 1989). For these reasons, Count 1 is preempted by § 301.

Plaintiff's claim for Breach of Covenant of Good Faith and Fair Dealing (first Count 2) is also preempted by § 301. "Section 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement." Newberry, 854 F.2d at 1147 (quoting Young v.

Anthony's Fish Grotto, Inc., 830 F.2d 993, 999 (9th Cir. 1987)). As noted above, Plaintiff's position was covered by the CBA.

Plaintiff's claim for Breach of Fiduciary Duty (second Count 2) is also preempted. "A cause of action that requires a court to ascertain whether the CBA in fact placed an implied duty of care on a union and the nature and scope of that duty involves the interpretation of the CBA and hence is preempted." Audette v. Int'l Longshoremen's & Warehousemen's Union, 195 F.3d 1107, 1113 (9th Cir. 1999) (internal quotation marks and citation omitted).

Finally, Plaintiff's IIED claim is also preempted because it is based upon the same employment actions that gave rise to his termination from employment. See Buscemi v. McDonnell Douglas Corp., 736 F.2d 1348, 1352 (9th Cir. 1984) (an IIED claim by a union employee based on wrongful discharge and that the employee suffered emotional distress from the "callous and insensitive manner of his termination" is preempted under the NLRA); Newberry, 854 F.2d at 1149-50 (finding an IIED claim was preempted because it would require a determination of whether the termination was justified under the terms of the collective bargaining agreement).

9

CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 12, 2008.



_____
David Alan Ezra
United States District Judge

Bandalan v. Castle and Cooke, et al., CV No. 07-00591 DAE-LEK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT